TERM AT TALLAHASSEE, 1857.        77

Chaires and Wife, et al, vs. Catharine G. Shepard et al.—Opinion of Court.

BENJAMIN CHAIRES AND WIFE, ET AL, APPELLANTS, VS. CATHA-
RINE G. SHEPARD ET AL, APPELLEES.

It is irregular to decree in part, in favor of a dowress, out of the personal estate
of her deceased husband, until the accounts of the Executor are made up
and Commissioners proceed with the whole subject matter before them to
make division.

Appeal from a decree of Leon Circuit Court in Chancery.

The case was argued on its merits by *W. G. M. Davis* for
the appellants, and Messrs. *Long & Galbraith* for appellees,
but the Court declined to make a decision upon the ques-
tions presented, for the reasons and upon the facts set forth
in the opinion, to which reference is made.

PEARSON, J.:

John S. Shepard having died in the year 1853, his widow,
heirs and distributees finding that the Will made by him
was incomplete and insufficient to accomplish its objects,
owing to the want of the number of witnesses required by
our statute, entered into an agreement on the 29th day of
June, 1853, for the allotment of dower to Mrs. Shepard, for
the payment of the debts and distribution of the estate.

A difference having arisen between the parties as to the
construction of this instrument of agreement, Chaires and
wife, and Pettes and wife, two of the distributees, filed their
Bill in Chancery, complaining of its execution and asking
for an equal share of the estate after disbursments provi-
ded for by the agreement and payment of the debts, and for
general relief.

On the 23d of March, 1855, the parties made another
agreement setting aside the former one except in its pro-
visions as to the minor heirs and agreed " that the widow
should receive her dower and widow's share in all the real
and personal estate of her deceased husband, and the rents,
issue and profits thereof." It was further agreed that the

property and effects of the estate should remain undivided and the plantation carried on under the control and management of the Executor until the third Monday in January next, when it should be partitioned, alloted and distributed amongst the different persons interested therein.

On the 10th December, 1855, the Court appointed commissioners to make distribution of the estate, who made their assessment, assignment and allotment of the lands and slaves, upon which a decree was passed affirming the same, and assigning to each party his or her peculiar interest and share. A part of this decree, and the only part excepted to, gave to Mrs. Shepard "one third part of all the personal estate of the late John S. Shepard, other than that specially decreed, including the proceeds of a draft drawn by Frederick R. Cotten, on Smallwood, Anderson & Co., for eight thousand six hundred and forty dollars, of which Shepard was the owner at the time of his death.— And the said Robert Gamble, the Executor, is hereby ordered to pay the same to her Solicitor." And further, "that she, the said widow, not having occupied the dwelling house and premises of her late husband since his death, is entitled to all the rents received, or to be received for said dwelling house and premises up to the date of this decree, and the Executor is ordered to pay the same to the said Catharine G. Shepard."

The decree upon these two points is complained of, and its propriety brought up for the decision of this Court.

But the decree further declares "that all that portion of the said bill of complaint which requires an account of his acts and doings to be rendered to this Court by the said Robert H. Gamble, Executor as aforesaid, be and the same is hereby dismissed without prejudice to the rights of any of the parties. It being understood that the said Executor is to settle his accounts in the office of the Judge of Probates according to law, and according to the terms of this decree, so far as those terms affect such settlement."

Chaires and Wife, et al, vs. Catharine G. Shepard et al.—Opinion of Court.

It appears from the proceedings then, that the entire personal estate, except the slaves, has not been the subject yet of the action of the commissioners, and remains, therefore, in the Executors hands, undivided, partitioned or distributed amongst the several parties in interest.    To effect this, it is necessary, according to the long established and well approved practice of the Court, that the Executor's accounts be made up, and the commissioners proceed with the whole subject matter before them, to make such allotment and division of the same, in specie, or otherwise, as may be consistent with the rules of law and the principles of justice.    If the parties, or any of them, are not content with the report of the commissioners, it would then be the proper time for exception, and the entire matter would come before the Court upon such exceptions as may settle the whole merits of the case.    The two items of account complained of now, we think, have been irregularly and prematurely brought up, before any account of this portion of the personal estate has been taken or any report made thereupon.    It is manifest that these two contested items must enter into the general account, and thereby affect the rights of all parties by increasing or diminishing the widow's share, and thereby increasing or diminishing the several portions of the distributees.    The items now contested, consist of these two only.    Whereas, the accounts when fully taken, may, and perhaps will consist of two hundred, every one of which being as much subject to controversy as those now sought to be made the subject of decision.    It is not the course of proceeding in this Court to make partition by piece-meal.    The Courts of Chancery have long been the subjects of complaint for the dilatoriness of their proceedings, and it seems to us the course here proposed would make them endless.    It is only possible for the Court to equalize and adjust the rights of all parties, by adhering to

its ancient rules and acting upon the whole subject matter of partition at the same time.

The agreement and decrees of the Court contemplate a final disposition of the subject, a full allotment of the dower, and a complete distribution. This can, and should be done by referring the case to the Master to adjust the relative interests of the various parties, and allowing such portion to each as he may be found entitled to, after payment of debts and expenses. In ordering such reference, it would be competent for the Chancellor at his discretion, to give such directions as might facilitate the adjustment, reserving his decree on the merits, to the final hearing.

There is also a further difficulty in relation to the widow's claim of exclusive right to the rents of the mansion house and premises. The bill makes no special complaint on this subject, and the decree in relation thereto, is based on the assumption that the widow did not occupy the dwelling house during the interval which elapsed between the death of the husband and the setting off her dower in the lands and slaves. No evidence appears of this in the record presented to us, and though it was doubtless admitted by counsel below as it has been in this Court, we do not feel satisfied to decide the question upon the isolated fact of such abandonment. The facts and circumstances connected with the surrender of the dwelling should be fully presented.— The question is a delicate one, and the Court to decide it correctly should be put in possession of everything illustrative of the rights and equities of the parties. Without such information, a decision would obviously be imperfect and unsatisfactory. Whatever desire we might have to adjudicate the question, we feel constrained for these reasons not to do so under present circumstances, but to reserve this, as well as the question made in relation to the draft of Fred. R. Cotten on Smallwood, Anderson & Co., until they shall be presented by exceptions to the Master's report.

So much of the decree therefore as relates to the two contested items of account, to-wit: the draft of Cotten, and the rents of the mansion house, must be set aside, and the cause remanded to the Circuit Court with directions to refer the subject of the distribution of the personalty other than slaves, to a master, with proper instructions to ascertain the nature, state, and amount of it, and adjust the interests and rights of the several parties, and also to report in full the evidence which may be taken in relation to the two contested items above mentioned, as well as the evidence in relation to any others that may be contested, with a view to a final decree. The costs of this Court to be a charge on that portion of the personal estate to be distributed.